TWENTY-ONE MINING CO. et al. v. ORIGINAL SIXTEEN TO ONE MINE, Inc.

(Circuit Court of Appeals, Ninth Circuit.)

No. 3190.

1. EQUITY ⬥⟹53(4)—OBJECTION TO JURISDICTION WAIVED.

Where a suit in equity to quiet title, in which the court has jurisdiction of the subject-matter and parties, has been fully heard without objection, and the court has announced its decision, it is too late for defendant to object to the jurisdiction to grant relief prayed for on the ground that the suit is ancillary to a pending action at law in which the question of title is involved.

2. MINES AND MINERALS ⬥⟹38(18)—EVIDENCE SUSTAINING FINDING OF SEPARATION OF VEIN BY FAULT.

A finding that an ore vein found beneath the surface of defendant's claim was a continuation of the vein apexing in complainant's claim, which was separated from the upper part by a fault, *held* supported by the evidence.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Frank H. Rudkin, Judge.

Suit in equity by the Original Sixteen to One Mine, Incorporated, against the Twenty-One Mining Company and the Valentine Mines Company. Decree for complainant, and defendants appeal. Affirmed.

See, also, 255 Fed. 658.

Frank R. Wehe, John B. Clayberg, and Bert Schlesinger, all of San Francisco, Cal., for appellants.

Wm. E. Colby, John S. Partridge, and Grant H. Smith, all of San Francisco, Cal., and Carroll Searls, of Nevada City, Cal., for appellee.

Before GILBERT and MORROW, Circuit Judges, and DOOLING, District Judge.

DOOLING, District Judge. This is an appeal from a decree entered in an action in equity. The appellee was plaintiff and the appellants defendants in the lower court, and will be so designated here. The plaintiff is the owner of the Sixteen to One mining claim and the defendant Twenty-One Mining Company is the owner of certain claims adjoining. The subject of the controversy is a vein carrying gold and other valuable minerals, the apex of which, according to the complaint, is wholly included within the lines of the said Sixteen to One claim, but which on its downward course extends beneath the surface of the claims owned by the defendant. The original complaint, in which the Twenty-One Mining Company was named as sole defendant, contains all the essential averments of a bill to quiet title to said vein, and avers that the defendant claims and asserts some estate and interest therein adversely to plaintiff, and has in pursuance of such adverse claim entered upon portions of the extralateral segment thereof, and mined and extracted and converted to its own use

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

valuable ore therefrom.    The complaint also contains the following averment:

"Plaintiff further avers that heretofore, to wit, on the 2d day of August, 1916, the plaintiff commenced an action at law against the defendant herein, in the District Court of the United States in and for the Northern District of California, to recover of and from said defendant the possession of all and singular the property of plaintiff hereinbefore described, and to recover the sum of one hundred thousand ($100,000) dollars as damages for the wrongs and injuries heretofore done and committed by said defendant upon the property of this plaintiff, as in this bill of complaint set forth; that said action at law is now pending in said court and undetermined."

The complaint then prays that defendant be required to set forth the nature and extent of its claim; that all adverse claims of defendant be determined by the court; that by its decree it be declared that defendant has no estate or interest in the said vein or any part thereof, and that it be adjudged that plaintiff's claim thereto is good and valid; that defendant be enjoined and forever restrained from asserting any claim to said vein throughout its length adverse to plaintiff; that a writ of injunction issue in accordance with the rules and practice of the court to restrain defendant from entering upon said vein, or working therein, or extracting ore therefrom, and that upon the final determination of said action at law such injunction be made perpetual; that an account be taken for the waste committed, and that plaintiff have judgment therefor; and for such other and further relief as to the court may seem meet and just.

It is true that plaintiff had commenced an action at law against defendant; but such action was not, as is alleged, to recover possession of the property in dispute, but solely to recover damages for trespass thereon.    The law action was first tried, and resulted in a verdict in favor of plaintiff in the following form:

"We, the jury, find in favor of plaintiff and assess the damages against defendant in the sum of $100,000, less cost of extraction of ore, on account of unwillful trespass."

Because of the uncertainty as to the actual amount of damages awarded therein, this verdict was later set aside in part by an order in the following terms:

"It is ordered that the verdict heretofore entered herein be permitted to stand, in so far as it finds the issue in favor of plaintiff, and a new trial will be awarded for the sole and only purpose of assessing the amount of the recovery."

At the opening of the trial of the law case before the jury, plaintiff's counsel made the following statement:

"Now, if your honor please, there is pending in this court an action on the equity side, in which the ownership of this vein is involved in the form of an injunctive proceeding, and I was going to suggest that it will save both parties a lot of trouble and a lot of money if the court will order that the testimony, in so far as applicable, taken in this case, shall be applied to the equity case.    Is there any objection to that?"

To this defendants' counsel replied:

"It is perfectly satisfactory."

Whereupon the court declared:

"It is so ordered."

After the trial of the case at law, Valentine Mines Company, which had no connection with the alleged trespass involved in that case, but had, after the present action had been commenced, acquired some interest in the property from the other defendant, was, by order of court and the consent of all the parties, made a defendant herein, and a supplemental bill was filed. This contained all the averments of the original bill, with the additional averment that a verdict had been returned in the law case in favor of plaintiff and damages assessed at $100,000, less cost of extraction of ore, and that judgment had been entered thereon. This bill was answered by both defendants. The answer asserts the rights of defendants to the property in dispute, avers that plaintiff has wrongfully extracted and converted to its own use valuable ores therefrom, of the value of more than $93,000; that said acts were committed by plaintiff after the commencement of the action; and that in consequence the court had issued an order restraining plaintiff from further working and extracting ore therefrom. The answer prays that plaintiff take nothing, and that defendants have their costs. It also prays that said restraining order against plaintiff be made perpetual as an injunction against plaintiff from further trespassing upon any part of said vein or veins, and from making any openings whatever beneath the surface of defendants' claims, and from entering thereon or therein.

Pursuant to the agreement mentioned, and by consent of counsel for both sides, the present action was submitted to the court for decision upon the evidence and proofs introduced in the trial of the case at law, together with certain depositions taken after such trial was concluded. The court in a written opinion decided in favor of the plaintiff, and directed a decree to be entered in accordance with the prayer of the bill. Then for the first time defendants objected to the jurisdiction of the court to enter such decree on the general ground that the suit in equity was wholly ancillary to the action at law, and that no decree could be entered therein until the final determination of said action, and then only in the exercise of such ancillary jurisdiction.

Two propositions are vigorously urged by defendants on this appeal: (1) That the trial court was without jurisdiction to enter the decree appealed from, for the general reason above stated; (2) that, upon the testimony, the decree, if entered, should be in favor of defendants.

[1] Even if it were true that the present action was commenced as ancillary to the case at law, which is not at all certain, the objection now urged, and which was made for the first time after the court had announced its decision in favor of plaintiff, comes too late. The action was treated by all parties as an action to quiet title. The plaintiff's counsel stated in their opening brief before the trial court:

"This is a suit to quiet title and for injunctive relief."

And defendants opened their reply brief with the statement:

"The issues are fairly stated in the opening brief of plaintiff."

The trial court, in the opinion directing a decree for plaintiff, declared:

"The relief sought is a decree quieting title in the plaintiff and awarding an injunction against the commission of further trespass by the defendant."

The defendants were seeking affirmative relief, and the cause was submitted by all the parties, not as one already determined by verdict or judgment in the action at law, or as dependent upon the result of that action, but as res integra, upon which the independent judgment of the court was sought, and which was to be decided, not upon the evidence adduced in the law case alone, but upon other additional and independent testimony as well.

The trial court, in passing upon this phase of the case, sums up the situation as follows:

"The stipulation on the part of the defendants to submit the equity suit on the testimony taken in the law action, the taking of further testimony by depositions to enable the court to determine the ownership of the vein, which it is now claimed was the issue involved in the law action, the request to appoint mining engineers or experts to examine the mine and report to the court, and the final submission of the case on the merits, is utterly inconsistent with the attitude of the defendants at the present time. But, whatever inconsistencies the parties may have been guilty of in the past, they were in entire accord in submitting the case on the merits, and in urging and insisting that the court in the equity suit should decide and determine the sole issue in the case, namely, the title or ownership of the disputed vein."

It is not a case here of conferring jurisdiction on the court in a matter not of equitable cognizance. The court as a court of equity had and has jurisdiction to quiet title, the bill contains all the allegations necessary for that purpose, all the parties were properly before the court, and all acquiesced in the method of procedure. In such case, neither party will be permitted, by the temporary withholding of objections until after the court has announced its decision, to place himself in such advantageous position that, winning, he can accept the fruits of victory, or, losing, escape the burdens of defeat. The decree appealed from, therefore, cannot be disturbed for lack of jurisdiction.

[2] The real controversy on the merits is as to the identity of the vein found beneath defendants' claims with the one having its apex in the claim belonging to plaintiff. The latter vein terminates at a fault. On the other side of the fault, and a short distance below, another vein exists. Plaintiff's contention is that these veins on either side of the fault are in fact segments of the same vein. Defendants contend that they are entirely different veins; that there were originally two veins, one lying above the other, of which the disputed vein was the upper, and plaintiff's vein the lower; that a portion of plaintiff's vein was thrown upwards several hundred feet, so as to bring it a short distance above the vein in dispute on the opposite side of the fault, while the same disturbance also threw the continuation of the disputed vein lying on that side of the fault several hundred feet upwards; that therefore the real continuation of plaintiff's vein may be found several hundred feet below the vein in dispute, while the continuation of the disputed vein was thrown above the present surface of the mountain and has been eroded by the action of the

elements. Many witnesses testified that the disputed vein and plaintiff's vein are identical. Practically an equal number testified that they are not. The witnesses on both sides were geologists, mining engineers, and practical mining men. Various maps and models were presented, supporting one theory or the other. There are 655 pages of printed testimony and affidavits in the record. From this evidence the jury in the case at law, and the court in the present case, decided that the disputed vein is a continuation of plaintiff's vein. This finding is amply supported by evidence, any summary or analysis of which must necessarily be voluminous, without serving any useful purpose whatever. That there is a sharp conflict in the testimony is true. The trial court accepted the theory and evidence of the plaintiff, and no such obvious error intervened, nor has any such apparent mistake been made in its consideration of the facts, or its conclusions therefrom, as would warrant this court in disturbing or modifying them.

The decree appealed from is affirmed.